**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CRIMINAL NUMBER 21-691** |
| | : | |
| **CHRISTIAN MATTHEW MANLEY** | : | |

**ORDER**

**AND NOW**, this day of , 2022, upon consideration of the Defendant's Motion to Revoke Detention Order and for Pretrial Release, it is hereby **ORDERED** that the Motion is **GRANTED**.

It is **FURTHER ORDERED** that Mr. Manley shall reside at the address to be provided to and approved by United States Pretrial Services.

It is **FURTHER ORDERED** that he shall be placed on home detention with location monitoring with standard conditions regarding permissions to leave for religious services, medical appointments and care, employment, and attorney appointments. Any time outside the approved residence must be preapproved by Pretrial Services.

**BY THE COURT:**

______________________________
**HONORABLE TANYA S. CHUTKAN**
**United States District Court Judge**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **CRIMINAL NUMBER 21-691** |
| | : | |
| | : | |
| **CHRISTIAN MATTHEW MANLEY** | : | |

**MOTION TO REVOKE DETENTION ORDER**
**AND FOR PRETRIAL RELEASE**

Defendant Christian Matthew Manley, by and through his undersigned attorney, moves the Court, pursuant to 18 U.S.C. §§ 3142(e) and 3145(b), to revoke the Magistrate Judge's October 21, 2021, order of detention and issue an order authorizing pretrial release with location monitoring and any other conditions deemed appropriate by the Court. Mr. Manley is neither a flight risk, nor a risk of danger to his community. Monitoring, along with other strict conditions of release, will reasonably assure Mr. Manley's future appearances before this Court and the safety of other persons and the community.

## I. PROCEDURAL HISTORY

On October 15, 2021, the government filed a criminal complaint against Mr. Manley, charging him with several offenses related to the breach of the Capitol on January 6, 2021. On the same day, Mr. Manley was arrested in Alaska, and the government moved for pretrial detention. On October 21, 2021, Magistrate Judge Matthew M. Scoble held a detention hearing in the District of Alaska. Notably, Probation and Pretrial Services recommended that Mr. Manley be released with conditions. Nevertheless, Judge Scoble ordered that Mr. Manley be detained. *See* 10/21/21 Detention Order, attached hereto as Exhibit A. Although Judge Scoble determined that Mr. Manley's history and characteristics weighed in favor of his release, the magistrate

judge found there were no assurances that Mr. Manley would abide by an order from the Court to appear in the District of Columbia, and that Mr. Manley presented a danger to the community. Judge Scoble based all such findings on the isolated incidents of January 6, 2021.[1]

On December 16, 2021, the government filed an indictment against Mr. Manley, charging him with civil disorder, in violation of 18 U.S.C. § 231(a)(3) (Count One); assaulting, resisting, or impeding certain officers, in violation of 18 U.S.C. § 111(a)(1) (Count Two); assaulting, resisting, or impeding certain officers using a dangerous weapon, in violation of 18 U.S.C. §§ 111(a)(1) and (b) (Count Three); entering and remaining in a restricted building or grounds with a deadly or dangerous weapon, in violation of 18 U.S.C. §§ 1752(a)(1) and (b)(1)(A) (Count Four); disorderly and disruptive conduct in a restricted building or grounds with a deadly or dangerous weapon, in violation of 18 U.S.C. §§ 1752(a)(2) and (b)(1)(A) (Count Five); engaging in physical violence in a restricted building or grounds with a deadly or dangerous weapon, resulting in significant bodily injury, in violation of 18 U.S.C. §§ 1752(a)(4), (b)(1)(A) (Count Six); disorderly conduct in a Capitol building, in violation of 40 U.S.C § 5104(e)(2)(D) (Count Seven); and act of physical violence in the Capitol grounds or building, in violation of 40 U.S.C. § 5104(e)(2)(F) (Count Eight).

On December 21, 2021, Mr. Manley filed a Motion for a Detention Hearing. *See* ECF No. 21. On December 23, 2021, Magistrate Judge Zia M. Faruqui denied the Motion. Mr. Manley now seeks review of Judge Scoble's order of detention.

[1] The recording of the detention hearing held in Alaska can be provided to the Court upon request.

## II. FACTUAL BACKGROUND

Mr. Manley was born and raised in Alabama. Sadly, his mother committed suicide when Mr. Manley was just nine years old, leaving his father as his primary caregiver. Following his high school graduation, Mr. Manley enlisted in the United States military. He successfully completed four years of service, after which he reenlisted and was promoted. Unfortunately, an assault took place under Mr. Manley's command, leading to his other than honorable discharge. Since then, Mr. Manley has worked in commercial fishing along the West Coast.

When Mr. Manley heard President Trump call people to the Capitol, he listened. He decided to drive up to Washington D.C. with another Trump supporter, Sean, who he had met through social media, and Sean's seventeen-year-old son. Mr. Manley attended the rally, and later arrived at the Capitol, with only Sean and his son. Cautious as a result of the protests that had occurred the prior summer, Mr. Manley was outfitted with a tactical vest and carried pepper spray.

As the video evidence shows, Mr. Manley ultimately used the pepper spray in a reckless manner, purportedly spraying law enforcement officers. He then retreated. Indeed, Mr. Manley never entered the Capitol building. Instead, he left the Capitol grounds, and took the metro back to his hotel.

The energy of the crowd on January 6, 2021 is well-documented, and the mood shifted from one of purported patriotism to agitation. Mr. Manley's alleged conduct that day was contrary to how he comported himself before or after January 6, 2021. With the exception of one DUI, Mr. Manley has no criminal history. He is not a member of a violent or extremist group. Rather he is a lone individual who was persuaded by the rhetoric of President Trump and the Republican party, and was led to believe that the 2020 election was stolen. Based on "Trump's

Big Lie," Mr. Manley believed voter fraud occurred, and committed to actions that were otherwise outside of character. He did not brag about the events on social media, nor did he incite action toward any other government proceeding. Mr. Manley is not a threat to his community and should not be detained pending trial.

## III. DISCUSSION

Mr. Manley seeks revocation of the detention order issued by Magistrate Judge Scoble and pretrial release. A current, individualized assessment of the circumstances demonstrate Mr. Manley's release would not present an articulable threat to others or a risk of flight. While the events of January 6, 2021 remain deeply concerning, courts overseeing these cases have explicitly declined to detain all defendants pretrial, including defendants charged with assault under 18 U.S.C. § 111(a) and (b). *See United States v. Sabol*, No. 21-35-1, 534 F. Supp. 3d 58, 71 (D.D.C. Apr. 14, 2021) ("Nonetheless, and despite the serious and chilling nature of the events that took place that day, the D.C. Circuit has made clear that detention is not appropriate in all cases involving Capitol Riot defendants.") (citing *United States v. Munchel*, 991 F.3d 1273, 1284-85 (D.C. Cir. 2021)); *United States v. Foy*, No. 21-00108, 2021 WL 2778559, at *4 (D.D.C. July 2, 2021) (same); *see also* Capital Cases Chart, attached hereto as Exhibit B.

Pretrial detention is limited to serious cases where no restricting conditions upon release would provide sufficient safeguards. "'[I]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception.'" *United States v. Cua*, No. 21-107, 2021 WL 918255, at *3 (D.D.C. Mar. 10, 2021) (quoting *United States v. Salerno*, 481 U.S.739, 755 (1987)). As such, the "default position of the law . . . is that a defendant should be released pending trial.'" *Id.*

While the Bail Reform Act establishes eligibility for pretrial detention for a crime of violence or a felony that involves the possession or use of a dangerous weapon,[2] it also instructs the Court only to detain defendants such as Mr. Manley if there is evidence that he is likely to flee or poses a danger to others. 18 U.S.C. §§ 3142(e) and (f). "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'" *Munchel*, 991 F.3d at 1279 (citation omitted). Detention is *only* appropriate where the Court finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). A finding that no condition or combination of conditions would reasonably assure the safety of any other person and the community must be supported by clear and convincing evidence, *see Munchel*, 991 F.3d at 1279-80; 18 U.S.C. § 3142(f), whereas a finding that no conditions would reasonably assure the defendant's appearance as required must be supported by a preponderance of the evidence, *see United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996).

Under some circumstances, the BRA may establish a rebuttable presumption of detention. *See* 18 U.S.C. § 3142(e)(1). But where that presumption is not implicated, the Court must consider the following factors to determine whether there are conditions that would reasonably assure the defendant's appearance and the public's safety: "(1) the nature and circumstances of the offense charged . . .; (2) the weight of the evidence against the person; (3) the history and characteristics of the person . . .; and (4) the nature and seriousness of the danger

[2] The BRA also establishes eligibility for pretrial detention when the case involves "a serious risk" that the defendant will flee or "will attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror." *Id.* § 3142(f)(2). However, there is no indication that § 3142(f)(2) was relevant to the analysis of either the government or Judge Scoble.

to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

"If a person is ordered detained by a magistrate judge, . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b); *see also United States v. Hassanshahi*, 989 F. Supp.2d 110, 113 (D.D.C. 2013) ("Authority to review the release order lies with the district judge."). The district court judge reviews the magistrate judge's detention order *de novo*. *Id*.; *see also United States v. Klein*, No. 21-236, 2021 WL 1377128, at *3 (D.D.C. Apr. 12, 2021) ("Although the D.C. Circuit has not ruled on the matter, every circuit to consider the issue has found that a magistrate judge's detention order is subject to *de novo* review.").

Utilizing the "default rule favoring liberty," Mr. Manley should be released pre-trial. The circumstances surrounding his alleged actions on January 6, 2021 were both exceptional and his alleged conduct aberrant. An individualized assessment of Mr. Manley and the circumstances of his case indicates he is not a flight risk or a danger to the community. Therefore, the Bail Reform Act requires release in this case because "there are conditions of release that will reasonably assure [his] appearance and the safety of any other person and the community." 18 U.S.C. § 3142(f), (g).

**A. There is no rebuttable presumption**

In his Order of Detention, Judge Scoble found a rebuttable presumption that no condition or combination of conditions would reasonably assure the appearance of Mr. Manley as required and the safety of the community existed under 18 U.S.C. § 3142(e)(3), but that Mr. Manley had presented evidence sufficient to rebut the presumption. In fact, the rebuttable presumption does not apply in this case.

Section 3142 sets forth two circumstances in which the rebuttable presumption applies, provided under subsection (e)(2) and (e)(3). *See Foy*, 2021 WL 2778559, at *3 (Chutkan, J.). Subsection 3142(e)(3) provides that the rebuttable presumption arises when there is probable cause to believe that the defendant committed one of a subset of offenses enumerated therein, none of with which Mr. Manley has been charged. Subsection 3142(e)(2) provides for a rebuttable presumption where the defendant has been convicted of certain enumerated offenses and had committed that offense while on release pending trial. *See id.* That subsection also does not apply to Mr. Manley, as he has no prior convictions committed while on pretrial release. Because neither (e)(2) nor (e)(3) apply, there is no rebuttable presumption in this case. *See id.* (finding the rebuttable presumption did not apply).

**B. The Government Cannot Prove By a Preponderance of the Evidence That Mr. Manley Poses a Serious Risk of Flight**

The preponderance of evidence in this case establishes that there is no serious risk that Mr. Manley will flee if released on bail to his paternal grandparents' home located at 16774 Lon Road, Athens, Alabama. Having been born in Athens, Mr. Manley has strong ties to that community. In addition, Mr. Manley's maternal grandfather lives in Elkmont, AL, which is less than ten miles away. Mr. Manley also continues to have the support of his father, a United States veteran with no criminal history, who currently lives in Florida.

At no point after January 6 and during the nine months prior to his arrest did Mr. Manley attempt to evade law enforcement. Significantly, Mr. Manley was fully cooperative during the course of his arrest. After being flagged for a warrant at the airport in Seattle, Mr. Manley did not attempt to run or hide, but was allowed to continue onto his flight to Anchorage. After arriving in Alaska, Mr. Manley was detained, and provided as much information that he could during an hour-long interrogation. Although Mr. Manley has a passport, it is in the possession of

the United States Marshal Service. In light of Mr. Manley's lack of serious risk of flight, detention on the basis of likelihood to flee is not warranted.

**C. The Government Cannot Prove By Clear and Convincing Evidence That Mr. Manley Presents an Identified and Articulable Threat to an Individual or the Community**

Outside of the unique set of circumstances that drew Mr. Manley to Washington, D.C. on January 6, 2021, he does not present specific and identifiable threat to any individual or his community. For detention to be appropriate on the basis of a defendant's "dangerousness," the government must "prove[ ] by clear and convincing evidence that an arrestee *presents an identified and articulable threat* to an individual or the community." *Munchel*, 991 F.3d at 1280. This inquiry is "forward-looking." *United States v. Hale-Cusanelli*, 3 F.4th 449, 456 (D.C. Cir. 2021).

In July, this Court, in *United States v. Foy*, preformed just such a "forward-looking" analysis and ordered the pretrial release of a defendant charged with multiple felonies, including 18 U.S.C. § 111(a)(1) and (b). 2021 WL 2778559, at *1. In that case, video footage showed the defendant "throwing a projectile and aggressively and repeatedly swinging a hockey stick towards law enforcement officers positioned outside of the center doorway of the Lower West Terrace of the U.S. Capitol." *Id.* Following the attack on the officers, the video footage showed the defendant "motioning his arms, seemingly urging other protesters forward, and ultimately climbing through a window into the U.S. Capitol, hockey stick in hand." *Id.* The government therefore prosecuted the defendant based on not just "his mere presence at the U.S. Capitol on January 6, 2021, but for his alleged participation in violent confrontations with uniformed officers protecting the entrance to the building during proceedings critical to our nation's democracy." *Id.* at *3. "Moreover," this Court noted, "unlike many other participants in the

events of January 6, Foy is alleged to have both engaged in a physical attack on law enforcement officers and to have breached the Capitol building itself." And there was no "shortage of evidence supporting the charges against Foy." *Id.* at *4. Nevertheless, this Court found that the defendant's history and characteristics "tip[ped] the scales—just barely—in favor of his release." *Id.* Notably, the defendant had "no prior criminal record, was honorably discharged from the United States Marine Corps in June of 2020, after approximately five years of service, and had been living with family members in their Michigan home throughout the pandemic." *Id.* There also was no evidence that the defendant had planned or coordinated with others in advance of the rally, or that he had promoted or celebrated the events of the day. *Id.* Thus, despite the "grave danger" the defendant's actions posed on January 6 to officers, lawmakers, and "the security of our democracy itself," this Court found close supervision provided by home confinement was sufficient to ensure the safety of the community. *Id.* at *5.

Similar to its analysis in *Foy*, weighing the four § 3142(g) factors against the backdrop of the notion that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception[,]" this Court should find that Mr. Manley does not pose a "concrete, prospective threat to public safety." *Munchel*, 991 F.3d at 1279-80; *see also Cua*, 2021 WL 918255, at *8 (granting defendant's motion for release despite factors one and two favoring detention); *United States v. Taylor*, No. 21-392-2, 2021 WL 3552166, at *9 (D.D.C. Aug. 11, 2021) (denying government's motion to revoke defendant's release despite only factors three and four favoring release); *Klein*, 2021 WL 1377128, at *12 (ordering defendant's release despite factors one and two favoring detention, and third factor only "slightly" favoring release).

1. *Nature and circumstances of the offense charged*

The circumstances of January 6, 2021 were unusually provocative, and unprecedented, leading to the arrests of over 700 people to date. The Honorable Beryl Howell, Chief Judge for the U.S. District Court for the District of Columbia has set forth six factors to consider that are relevant to the nature and circumstances of offenses committed on January 6, 2021: whether the defendant (1) has been charged with felony or misdemeanor offenses (2) engaged in prior planning before arriving at the Capitol; (3) carried or used a dangerous weapon during the riot; (4) coordinated with other participants before, during, or after the riot; (5) assumed a formal or de facto leadership role in the assault by encouraging other rioters' misconduct; and (6) used words and movements that reflected the egregiousness of his conduct." *United States v. Chrestman*, 525 F. Supp. 3d 14, 26-27 (D.D.C. Feb. 26, 2021). A close analysis of these factors suggests the nature and circumstances of the offenses charged do not demand detention.

Mr. Manley has been charged with felony offenses. While felony offenses "are by definition more serious than misdemeanor offenses[,]" this designation should not carry great weight. Individuals charged with felonies routinely are released from pretrial custody and, more specifically, many defendants charged with § 111(a) and (b) offenses stemming from the events of January 6, 2021 have been released pretrial, including the defendant in *Foy*. *See* Capital Cases Chart, Exhibit B.

The record indicates that Mr. Manley's alleged actions were opportunistic and occurred during a brief period when emotions were running high, not premeditated. Although Judge Scoble stressed that Mr. Manley arrived at the protests outside the Capitol Building wearing protective clothing and carrying two bottles of pepper spray, there is no concrete evidence of prior planning of violence or other coordinated behavior. Indeed, both the tactical gear and

pepper spray were intended for protective purposes. Unlike weapons such as firearms, bladed weapons, or clubs, pepper spray is a tool of self-defense. Relatedly, the pepper spray that Mr. Manley carried should not be characterized as a dangerous weapon. *See United States v. Brown*, No. 21-mj-565, 2021 WL 4033079, at *3 n.3 (D.D.C. Sept. 3, 2021) (declining to decide whether pepper spray is a "dangerous weapon").

As to his role in relation to the other protestors, Mr. Manley attended the protest with only two other people, with whom he had driven to D.C. from Alabama. He was not part of a group with coordinated actions, and he is not otherwise a member of any extremist group that was more systematically involved in the events. Mr. Manley also did not assume any formal or de facto leadership role on January 6, 2021. He did not even enter the Capitol building. Nor is there evidence of social media posts or other information identifying radical sentiments or encouragement to others by Mr. Manley. *Compare Chrestman*, 525 F. Supp. 3d at 28 (noting defendant "coordinated with his fellow Proud Boys and others," "led his co-conspirators through the Capitol grounds and into the building, shouting at the crowd to 'take' the Capitol," and "deployed his axe handle").

While Mr. Manley's actions arguably might cause concern for the Court, any such concerns may be alleviated through the use of tailored release conditions. Therefore, this factor weighs in favor of release.

2. *Weight of the evidence against Mr. Manley*

Although there is ample video evidence in this case, "[e]ven overwhelming evidence of guilt" does not amount to "clear and convincing evidence that no conditions of release can reasonably assure the safety of the community." *United States v. Taylor*, 289 F. Supp.3d 55, 66 (D.D.C. 2018) (instructing court must "review the weight of the evidence against the defendant

as an indicia of whether any conditions of pretrial release will reasonably assure the safety of the community"). Moreover, "[t]his Court has also recognized that courts in other Circuits have 'cautioned that a district court assessing the weight of the evidence must not consider the evidence of defendant's guilt, but rather must consider only the weight of the evidence of the defendant's dangerousness.'" *Taylor*, 2021 WL 3552166, at *5 (quoting *United States v. Brown*, No. 1:20-CR-27-4, 2021 WL 1736870, at *8 n.4 (D.D.C. May 3, 2021)). In either case, whether the Court considers the weight of the evidence of Mr. Manley's guilt or of his dangerousness, the government cannot show that there are no conditions of release available to assure the safety of Mr. Manley's community.

*3. History and characteristics of Mr. Manley*

In considering the history and characteristics of Mr. Manley, the Court must take into account "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A). As Judge Scoble found, this factor weighs in favor of release.

As discussed, Mr. Manley is a high school graduate, who served for four years in the United States Marine Corp. Although he was eventually discharged due to an incident in 2017, he was just 21 years old at the time, and has had very minimal contact with the criminal justice system until now. He has no mental health issues, and no current substance abuse issues. Any concern with past substance abuse issues could be mitigated with a condition of release requiring testing and treatment. Significantly, Mr. Manley was cooperative during his arrest and did not attempt to evade law enforcement, which shows that he not only recognizes the severity of the

charges against him but also respects the rule of law. *See Taylor*, 2021 WL 3552166, at *7 ("Even if there is no evidence of [defendant's] 'remorse' per se, unlike other cases before this Court, the record suggests that [the defendant] 'understands the severity of the charges against him' and will act accordingly.").

In addition, the mere fact that Mr. Manley has been charged for his actions on January 6, 2021, cannot serve to undermine his history and characteristics. Such an approach would amount to a *per se* rule that all actors involved on January 6, 2021 should be detained. But the release of many other similarly situated defendants establishes that no such rule exists. Accordingly, based on the history and characteristics outlined above, this factor weighs in favor of release.

*4. Nature and seriousness posed by Mr. Manley's release*

There is no evidence in the record that Mr. Manley would be a danger to the community if released. The final factor to consider is the "nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(4). This analysis carries particular weight. *See Cua*, 2021 WL 918255, at *5; *Foy*, 2021 WL 2778559, at *5. When analyzing this factor, the Court must consider whether the government has "proved by clear and convincing evidence that an arrestee *presents an identified and articulable threat* to an individual or the community . . . ." *Munchel*, 991 F.3d at 1280. Indeed, the point of detention is to "disable the arrestee *from executing that threat*." *Id.* (quotation omitted). Merely identifying the danger that Mr. Manley posed on January 6 is insufficient, as the "specific circumstances of January 6 have passed." *Taylor*, 2021 WL 3552166 at *8 (quoting *Munchel*, 991 F.3d at 1284). Because the government cannot demonstrate that Mr. Manley presents an articulable or continuing threat to the community, this factor weighs against detention.

In *Munchel*, the D.C. Circuit emphasized that any threat posted by a defendant to an individual or the community must be considered in context: "whether a defendant poses a particular threat depends on the nature of the threat identified and the resources and capabilities of the defendant." 991 F.3d at 1283. It also depends on "the specific circumstances that made it possible, on January 6, for [a defendant] to threaten the peaceful transfer of power." *Id.* at 1284. In that case, the appellate court found that the district court had not demonstrated that it adequately considered whether defendants, who were a part of the mob assault on the Capitol, wore tactical vests and were armed with tasers and possible other weapons, illegally entered the Capitol and went as far the U.S. Senate chamber, carried weapons onto Capitol grounds, and showed no remorse for their actions to the media, but had limited criminal history, *id.* at *1275-78, presented "an articulable threat to the community in view of their conduct on January 6, and the particular circumstances of January 6," *id.* at *1283. The D.C. Circuit further found that the district court failed to explain how the defendants would be capable of "act[ing] against Congress in the future" now that the specific circumstances of January 6— "a unique opportunity to obstruct democracy on . . . because of the electoral college vote tally taking place that day, and the concurrently scheduled rallies and protests"—have passed." *Id.* at *1284. Indeed, because "the presence of the group was critical to [the defendants'] ability to obstruct the vote and to cause danger to the community," *id.*, the district court should have considered the defendant's real threat to the community outside such a group.

Similarly, in *United States v. Owens*, Judge Howell found the "likelihood of future violence to the community or to other law enforcement offers" appeared "small" give the "specific circumstances that made it possible on January 6 for [the] defendant to engage in [an actual assault of police officers]," namely, "the presence of the group," with which the defendant

had no "apparent planning or coordinated actions." No. 21-286, 2021 WL 2188144, at *11 (D.D.C. May 28, 2021). Judge Howell found her dangerousness assessment consistent with three other cases—*United States v. Gossjankowski*, 21-123, *United States v. Blair*, 21-186, and *United States v. Leffingwell*, 21-005—in which the defendants had been "charged with offense conduct violative of 18 U.S.C. § 111(b), on January 6, 2021, by physically assaulting police officers with a taser, lacrosse stick, and fists, respectively, but were released without government opposition." *Id.* Like the defendant in *Owens*, none of those three defendants were "part of any organized gang, had engaged in any prior planning or coordination with others for their participation on January 6, nor had any discernible criminal or violent history." *Id.* "In other words," the Court concluded, "as with the instant defendant, the dangerousness of these three defendants appeared to be limited to their conduct on January 6." *Id.*

Thus, in assessing whether Mr. Manley poses a concrete threat to the community, his charges cannot be divorced from the exceptional circumstances of January 6, 2021. When viewed in context, the only threat arguably presented by Mr. Manley is limited to the particular circumstances that transpired. Viewed within the context of January 6, 2021, the evidence shows that Mr. Manley was caught up in the frenzy of the rally and protest. *See Klein*, 2021 WL 1377128, at *12 (ordering defendant's release after analyzing Section 3142(g) factors in part because government "proffered no evidence that [defendant's] prolonged confrontation with law enforcement or even his attempt to breach the Capitol building were premeditated"). At most, one could assume *arguendo* that Mr. Manley poses a danger to, say, attempt to stop an act of Congress in the future, but this danger would require the same set of unique circumstances that occurred on January 6, 2021—a rally, protest, Congressional tally of votes—to take place again. This is too speculative a basis to make a specific finding of danger to any person or the

community. *See United States v. Lee*, 451 F. Supp.3d 1, 7-8 (D.D.C. 2020) (concluding the danger posed by the person's release is the "risk that he will continue to engage in the *same types* of unlawful and potentially dangerous conduct") (emphasis added). Absent a coordinated and highly politicized rally during a simultaneous electoral college vote tally, Mr. Manley poses no risk of any danger to the community. Given this one very specific and speculative risk, there are certainly conditions to mitigate, if not eliminate, the risk that Mr. Manley would engage in conduct during another political rally.

Additionally, Mr. Manley's history and characteristics inform the analysis of dangerousness to the community. *See Foy*, 2021 WL 2778559, at *5 (concluding defendant's personal history stood in contrast to his actions); *Klein*, 2021 WL 1377128, at *11 ("[D]espite his very troubling conduct on January 6, the Court finds on balance that Klein's history and characteristics point slightly toward release."). Mr. Manley has just one prior conviction, a DUI, and no social groups with which to foment antisocial behavior. There is no evidence that he has created any social media posts threatening continued political violence. *See Cua*, 2021 WL 918255, at *7-8 (granting release despite defendant's violent social media postings). Simply put, absent a coordinated political rally for a unique purpose, Mr. Manley poses no danger to his community. *Taylor*, 2021 WL 3552166, at *1, 5, 9 (denying government's motion to revoke pretrial release despite serious felony charges including physical struggle with law enforcement, defendant carrying a knife, and allegations that defendant organized "a group of 'fighters' to travel with weapons," because third and fourth factors favored release).

In any event, the Court need not find that Mr. Manley is certain not to pose *any* danger in the future, as stringent release conditions can be imposed to mitigate such risk. *See e.g.*, *Klein*, 2021 WL 1377128, at *12 ("[The defendant] does not pose no continuing danger, as he contends,

given his demonstrated willingness to use force to advance his personal beliefs over legitimate government objectives. But what future risk he does present can be mitigated with supervision and other strict conditions on his release."); *Taylor*, 2021 WL 3552166, at *9 ("[The defendant] may pose *some* continuing danger . . . but . . . the Court finds that the government has failed to show by clear and convincing evidence" the requisite articulable threat); *Owens*, 2021 WL 2188144, at *12 ("This falls short of demonstrating that defendant poses the kind of dangerousness requiring pretrial detention since the risk he poses to the safety of the community and others may be cabined by tailored release conditions."). Thus, any risk concerns can be mitigated through any number of conditions of release.

Admittedly, the Court's decision is not an easy one, "but, in the absence of a concrete, prospective threat to public safety that cannot be mitigated by strict conditions, this Court must apply the default rule favoring liberty'" which weighs firmly in favor of Mr. Manley's release. *Klein*, 2021 WL 1377128, at *13. Strict conditions of supervise release will reasonably assure Mr. Manley's appearance and the safety of the community. *See Foy*, 2021 WL 2778559, at *5 ("In light of the shocking and violent nature of Foy's actions, however, the court does find that the close supervision provided by home confinement is needed to ensure the ongoing safety of the community and of our democratically-elected government.").

## IV. CONCLUSION

For the foregoing reasons, defendant Christian Matthew Manley respectfully requests the Court grant the instant motion and issue an order for pretrial release, including conditions at the Court's discretion.

Respectfully submitted,
*/s/ Natasha Taylor-Smith*
NATASHA TAYLOR-SMITH
Assistant Federal Defender

**CERTIFICATE OF SERVICE**

I, Natasha Taylor-Smith, Assistant Federal Defender, Federal Community Defender Office for the Eastern District of Pennsylvania, hereby certify that I caused a copy of the Defendant's Motion for a Detention Hearing to be served by Electronic Case Filing ("ECF") upon Robert Juman, Assistant United States Attorney, United States Attorney's Office, 555 4th St., NW, Washington, DC 20530.

*/s/ Natasha Taylor-Smith*
NATASHA TAYLOR-SMITH
Assistant Federal Defender

DATE: January 14, 2022